### CALIXTRO RESENDEZ v. THE STATE.

No. 4131.    Decided June 21, 1916.

**1.—Murder—Evidence—Declarations of Defendant.**

Upon trial of murder, there was no error in admitting in evidence the declaration of the defendant that he would not consent to a divorce, and that the deceased should be careful because she would know what she would be

getting, etc.; it having been shown that deceased had brought a suit for divorce against the defendant.

**2.—Same—Evidence—Conversation—Practice on Appeal.**

Where appellant complains that the court below erred in admitting in evidence the conversation between himself and deceased relative to the signing of the waiver in her divorce case against him, and the relation of the said conversation to the case did not appear of record, the matter can not be reviewed.

**3.—Same—Evidence—Acts of Defendant—Bill of Exceptions.**

Upon trial of murder, it was admissible to show that defendant went to his house just prior to the killing and took his clothes away from home; besides the bill of exceptions was defective.

**4.—Same—Evidence—Conversation—Bill of Exceptions.**

Where the bill of exceptions failed to set out the conversation to which defendant objected, the same can not be reviewed on appeal.

**5.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions failed to set out the object and purpose of the rejected testimony, the same can not be reviewed on appeal.

**6.—Same—Bill of Exceptions—Practice on Appeal.**

Where the answer of the witness was not set out in the bill of exceptions, but it simply recited that the question was asked, the matter can not be reviewed.

**7.—Same—Bill of Exceptions—Practice on Appeal.**

Where the bill of exceptions did not show the relevancy or connection which the rejected testimony had with the case, the matter can not be reviewed on appeal.

**8.—Same—Sufficiency of the Evidence.**

Where, upon trial and conviction of murder, the evidence sustained a conviction, there was no reversible error.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for the appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder and given ninety-nine years in the penitentiary.

A bill of exceptions recites that the witness Barron was permitted to testify that about a week prior to the killing the defendant had been requested by the deceased to sign a waiver so that she might secure a divorce, and appellant at the time it was offered objected because it was irrelevant, immaterial, and had no bearing on or connection with the crime with which the defendant is charged, nor did it tend to

establish a motive for such a heinous crime as that of which the defendant was accused, nor did it show malice towards his wife. These objections being overruled, the witness stated defendant refused in the following language: "I will not sign no divorce, but you be careful because you will know what you are going to get." This statement was admissible. The bill is hardly sufficient to present the connection in which this testimony got into the case or why it was inadmissible. There are no surrounding facts stated as to why it was or why it was not admissible, or its bearing or want of bearing upon the issues of the trial. It, however, does apparently show on its face that it was admissible as bearing upon the relation of the parties to each other, they being husband and wife, and the divorce proceedings about which the waiver was asked. It may have furnished or assisted in furnishing a reason for affecting or as having a bearing upon the relations of the wife to the husband, and the feeling that may have prompted him in going to her house at night and killing her. The bill recites that this conversation occurred, and his refusal to sign the waiver about a week before he killed his wife.

The next bill recites that the court erred in permitting to go to the jury the conversation between defendant and the deceased relative to the signing of the waiver in her divorce case, and at the time it was offered appellant objected, setting out various reasons why he objected. The conversation is not stated, nor any of the facts in connection with it further than that there was a conversation. In order to enable this court to intelligently revise this question the conversation and its relation to the case should have been stated.

Another bill recites that the same witness, over objection of appellant, was permitted to testify that about two weeks before the killing defendant came to his own house with a policeman and took his clothes away with him, and the conversation relative to same which defendant had with his wife. The defendant at the time it was offered objected. There is nothing stated that shows how this affected the case before the jury or could have done so. It was admissible to show that he went to his house just prior to the killing and took his clothes away from home. From this it might be inferred there was a separation between the parties, at least showing that they were not then living together. The conversation that occurred at the time may have been admissible, or it may not have been.

Another bill recites the same witness, Barron, was permitted to testify that about two or three days after defendant had gotten his clothes from his house, defendant stopped his wife, the deceased, and her sister, as they were coming to town and sought to have a conversation with his wife. Various objections were urged. The conversation is not stated, and we can not review the matter.

Another bill recites the defendant placed a witness named Diaz on the stand and propounded to him the following question: "Prior to his, the defendant's, arrest, and prior to this killing, or homicide, did

you have a conversation with him, the defendant? The witness replied, "I did. The witness was then asked: "In your official capacity?" To which the witness replied: "Yes, sir." Then the witness was asked: "What was it?" The State objected for various reasons. The bill then recites that it was expected to elicit from the witness the statement that a few days prior to the alleged homicide the defendant called upon the witness in his official capacity as deputy sheriff of Bexar County, and requested that he arrest one Rodriguez, a musician, for coming to his house, or in front of his house and raising a disturbance and trying to kill him, and that the said Rodriguez was caught at the gate talking in a very low tone at a very late hour at night with his, defendant's, wife. The purpose of offering this testimony is not stated. The object and purpose, however, should be stated in a bill of exceptions, unless such purpose is manifest or obvious where testimony has been rejected when offered by the defendant. Just what the purpose was in offering it would be but inference as defendant stated no reason why he offered the testimony.

Another bill recites that while the defendant was testifying the State asked him the following question: "Hadn't you made repeated threats to kill your wife prior to that time?" Objections were urged to this, which were overruled. The answer of the witness, however, is not set out in the bill. It simply recites that the question was asked. Whether he answered that he had made or had not made the threats is not shown.

Another bill recites that while the State's witness, Moran, was testirying the prosecuting attorney asked him the following questions: "Were you at her (the deceased's) house prior to her death?" The witness responded: "I stayed there until 10 o'clock that night." The witness was then asked: "State what you were doing at her house that night." To this defendant objected because it was immaterial and irrelevant. The court overruled the objection, and the witness answered: "I just went to doctor that lady· that night; she was a little sick." What connection this had with the case, or its relevancy, is not shown by the bill of exceptions, nor are any of the facts set out to show or indicate why the testimony could possibly be hurtful. In the absence of this character of showing the bill will not be reviewed.

These cover the questions raised by the record, and none of them show any reason why the judgment should be reversed. The evidence is ample to sustain the verdict of the jury. The appellant was the second husband of the deceased, her prior husband having died. He had been married to her about four years, his wife being the mother of a couple of children at the time he married her. There came no children from the second marriage. Dissensions arose between them with reference to the children, and appellant did not seem to contribute anything particularly to the support of the family. But be that as it may, these dissensions reached a culmination a short time before the homicide, and it seems deceased brought suit for a divorce, which appellant refused to sign, making the qualified threat as set out in one of the

bills of exception above stated.  Prior to the homicide appellant had gone to their home accompanied by an officer, had obtained his clothes and carried them away.  On the night of the homicide he went to the house where deceased and her children were living, entered the house, and killed the deceased by stabbing her with a knife.  The sister of deceased, Eufracia Barron, was an eyewitness to the matter.  Deceased seemed not to have been well that night, and one of the witnesses who testified in the case had been at her house administering to her wants until about 10 o'clock, when she left.  Along near midnight appellant came and called the deceased.  Her sister, Eufracia Barron, testified to witnessing the transaction, giving details as to the transaction.  We think the testimony sustains the verdict.  The appellant testified in his own behalf.  He says he went to the house that night and when outside of the house he heard a conversation in a low tone of voice, and thought he heard somebody kissing his wife, and he went in the house to see about that and a man ran out, and in striking at what he thought was the man he happened to strike his wife.  This was his side of the case.  The jury evidently did not believe it; they could have believed his story had they seen proper to do so, but they discarded it, and there is no reason why this court should disturb their finding under the facts of this case.

The judgment, therefore, will be affirmed.

*Affirmed.*